May it please the Court, my name is Mark Thierman. I represent Doris Miller, plaintiff in this action. I would like a few minutes, two minutes, two Ninth Circuit minutes for rebuttal. Basically, there's a combination of factors that make a pay plan, in this case, unlawful. It's not that it's a decreasing amount the more work you do per se, but it's a decreasing amount the more work you do in overtime, plus the fact that you have a 15-day work period that the regular rate is being calculated on instead of the work week. It's fundamental in labor law, federal and state, that the unit of measure, the unit of calculation, except with very few deviations, is the work week. This country works on a work week. Other countries work on different standards. Counsel, but doesn't the regulation contemplate that you can have up to 16 days? Doesn't it vary by the industry? No. I'm just not sure which regulation you're talking about. Are you talking about pay periods or calculation of rates? Pay periods. You can pay 16 days for hourly workers. You can pay every 16 days. You can't calculate every 16 days. Let's assume, just for discussion purposes, let's assume you're correct. How did your client carry her burden in connection with the motion for summary judgment? Even assuming that your construction of the regulations is correct, what did she submit to respond to Matrix's, Supercut's, motion and the evidence that was put in there? She submitted her pay stubs. She submitted her pay stubs? Pay stubs didn't prove anything. She submitted her pay stubs together with the matrix itself, plus the fact that it showed that the more hours she worked in two different weeks, she earned less per hour. But, Counsel, with due respect, what was submitted, at least to me, seemed like a bunch of gibberish. The pay stubs were unauthenticated. You just have a whole bunch of numbers there. It looks like, you know, like Jaime Escalante on a board. You can't make any sense out of it. How was the district court supposed to make any sense out of the burden that your client had to respond to Matrix's motion for summary judgment? Okay. On page 35 of the excerpts of record, volume 2, attached to this exhibit A and B are the pay stubs and the payroll periods. First shows two different hourly rates, $11.08 and $10, the same work period. But the overtime is based solely on the lower rate. I mean, it's just math. Wait, that's your submission. Well, you asked what you need to submit. You're like quoting from your own brief. No, I know that. But you asked what you need to submit. You take the payrolls. You look at what the payrolls say. I mean, they're self-evident. They're business records. And you say, look, it says right here, there's the rate. It says rate. Did you provide an expert witness? Did you bring in an accountant or anybody? No, I did not for this motion. Well, isn't it true that in the submissions there's no dispute that they figured the overtime rate based not on one week but on 15 days? That's true. And there's no dispute that if in the first week the employee worked at, say, $15 an hour, and in the second week worked at, say, $5 an hour or $10 an hour, which is the minimum, that the overtime rate would be a combination. That's true. And while in some instances if the first week didn't involve overtime and the second week did, it wouldn't make much difference. But overall, because it's put on a 15-day period, it violates the regulation and the understanding that overtime is figured on each particular week, and that's in the law, and it's not what the company did. You got it. That's the case. That's 90 percent of the case. The other 10 percent of the case is the fact that under the matrix system, if you work 40 hours, you get a certain rate. You work 41 hours and you're not productive, that is, you're not doing revenue-generating work, but you're required to work it, your actual hourly rate goes down. That's a – it's like a fluctuating work week. I got yelled at because I said fluctuating work week, but it's like a fluctuating work week, and California doesn't allow that. The federal does. I've got one more question. Go ahead. Now, there is a provision that allows an employer to have an hourly rate that's more than on a weekly basis under certain circumstances. Now, my understanding is that that's usually a piecework kind of a thing. But does this arrangement fall into that category where a person one week works at a high-pay position and the second week works in like a janitor in a low-pay position? Yes. We're not saying they can't have two different rates. What we're saying is you can't base overtime in one week on a blended rate or a rate that comes from another week. And that's all we're saying. That's the overtime case. The problem, though, counsel, with respect, is that you look at the district court's ruling on the summary judgment. It clearly felt that matrix meant its initial burden. So that meant under our rules of civil procedure that you then had to come back and indicate why there was an issue, a genuine issue of fact. And under the rules, they filed, you filed, you failed to file a separate statement in opposition to their separate statement, which meant that all that they said was deemed admitted. Do you disagree with that? No. I go back to. Aren't you toast? No. The reality is if everything they said is true and you've admitted it by failing to respond, then where's the problem? Just as His Honor stated, the problem is not the facts. The problem is applying the law to the facts. The facts they state are on page 9 of their brief. Okay. But I understand your perspective. I'm simply saying let's say you're right about the law. Don't you still have to come forward with evidence in this case to show that if the law is as you view it, that you win? And you have failed to do that. You have not provided any evidence to show that if the law is as you believe, that you're entitled to win, have you? Yes. I've provided their evidence. You provided their evidence? Look, in their statement of undisputed facts, they say that on the second bullet point, all forms of pay including hourly pay commissions and any form of pay are added together then divided by hours worked during the payroll period. You don't do the payroll period. You do the work week. I understand. I understand your perspective. I'm simply saying that if let's just take a separate case. You and I have some litigation and you file something and you say X, Y, and Z. And I don't bother to respond at all. I don't say anything. Don't I lose in the summary judgment? No, because I only did respond to the factual allegations which are not in dispute. I did say they were wrong on their conclusions. I did say they applied the law incorrectly. Okay. But then what you didn't do was if you say, okay, the law, they had to calculate it A plus B equals C. And here's my A and here's my B and here's my C. You gave the formula, but you didn't provide the basis upon which A, B, and C could be there. You left a vacuum. No, I gave 29 CFR sites for the formula. Again, that's the formula, but you didn't provide the facts. The fact that you put your client's pay stub in there, which was unauthenticated, does not provide any evidence to back this up. Believe me, I feel for you, but I just don't understand how you get over this hurdle, whatever the law is. Okay. First of all, I get over it by saying it is ‑‑ I thought it was just a California practice. I didn't realize it was actually a local rule. But it transferred into federal court for some reason because Judge Wu came from the state court. But forgetting that, their facts, their facts are accepted. Their facts don't say, and by the way, it's legal, and if that's not a fact. Their facts say, here's how we did the process. Okay. The process you did is wrong. It's incorrect mathematically. It's incorrect mathematically given a set or a rule that says you can't do it that way. And then I just showed the math. And if I told you that looking at the math, it made absolutely no sense to me, would that make any difference? No, that just means I'm not very good at math. Or I'm not very good at reading it. I don't know. But the reality is it's your burden, isn't it? You have to come forward and show the court how you apply the facts to the law as you understand it. Let me give you an example. Okay. They say 2 plus 2 is a fact. We have 2 apples and we have 2 oranges. Okay. And then they say that's the stipulated fact. I don't disagree with that. You have 2 apples and you have 2 oranges. Okay. They say we have orange juice. I say, no, you have apple orange juice. Okay. And then you don't prove it. Those are not facts. But those are not facts. Those are conclusions. I understand. But in that example, if you say, no, they don't have orange juice, then you don't explain why they don't have orange juice. That's the problem. Because the FDA says the definition of orange juice says it contains 80 percent oranges. I don't know. I mean, I'm winging that part. But you get the idea. I'm not arguing. I think you got it, Judge. I'm not arguing that this is the payroll system. There's no hiding the ball. It's sitting there in a chart. What I'm saying is the logical consequence of what they do is twofold. One, they are paying overtime rates based upon an average of two weeks, where the second week they could have worked no overtime. Therefore, the rate might be very much lower. Or they weren't productive, which means the rate might be very much lower. Or it could be very much higher. Or it could be very much higher. Right. Right. It could be higher. And the second thing I'm saying is look what happens when they do the cleanup. Look what happens when they do the base rate jobs where they get an hourly rate. It lowers their productivity. There are no pieces being done in a piece rate situation. And, therefore, you have overtime being paid at a lower rate the more hours you work, which is contrary to California law, not contrary to federal law. Like but not the same as a fluctuating work week. It's a matter of social policy. And that comes right from the record. I mean, I'm not arguing that they lied or they told an untruth. I'm saying, yeah, that's what the numbers say. And it's wrong because the formula is wrong. And that's a matter of law. The law says you can calculate it on the work week. I'm not some expert. A juicy argument. A juicy argument. Thank you very much. I want to say something. I know you want to just postpone, but you understand. Sometimes judges come from a long way, and we just can't accommodate. I told the people at the canal they let me go through two days early. I flew back for this. It was a great experience. I recommend it highly. I've been through the canal. Not in a catamaran, though. I was in a big ship. Did you power it yourself? That was really weird. Our court has been accused of being adrift for some time. There are cement walls. It's not good for the canal. Good morning. May it please the Court. Catherine Baker for Defendant Supercuts and Regis Corporation. To your Honor's point, the first thing is the burden of proof issue. So let's assume we have some agreement about a problem with the law. The second step has been ignored. Counsel cited a case, Cash v. Con Appliances, that sets forth a pretty basic proposition, which is with an overtime violation, you have to prove that there's a violation of the overtime requirements, and you have to prove that it resulted in a denial of overtime. With the convoluted math contained in the district court record, that didn't happen. We submit it couldn't have happened, but it doesn't matter. It didn't happen. No one has proven in the record before this Court that Doris Miller was ever denied one penny of overtime. Now, just a minute. Yes, sir. She's bringing this suit not only for herself but for others, right? Yes, sir. Your company agrees that you're paying overtime on a 15-day basis, and you're admitting, as I see it, the law requires overtime to be paid on a 7-day work week. Now, we're at a summary judgment stage. The question is not whether they've established a case completely. You still have a – if this case goes on, all I'm concerned with is there an indication in the facts that she may have been deprived of proper overtime, and immediately it's admitted. It's not a question of fact. It's admitted that you use a blended 15-day rate. Now, it may well be that that's justified, but it's not shown as justified on this record. And everything I've read indicates that overtime in this state, and it may be in the United States, I'm not sure about all the federal, but at least in California, it has to be paid on a 7-day basis. And that's my question to you. Yes, Your Honor, thank you for posing that question. The answer is we absolutely pay overtime daily and weekly in California. That is, we pay overtime on a weekly basis as well as a daily basis as required under California law. Well, don't you blend two weeks together to figure what the base rate is? What we do on a semi-monthly basis is calculate the regular rate of pay for purposes of determining what that overtime is. We still pay the overtime on a daily basis and a weekly basis. But you don't pay on the same rate. In other words, if I'm working for you and all week I'm doing this hairdressing business that really pays off, you know, and the rate is $15 an hour, and then the next week I'm doing janitor work and the rate is $5 an hour, it comes down for the 40 hours you blend it so that the base rate is $10 an hour, not $15 during the first week. Sometimes it goes up, sometimes it goes down. Once, as I see it, once it's established that in the course of a year she may have been deprived of overtime, figuring the base rate for that one seven-day period, that's enough to overcome summary judgment, and let's go to the whole proof of all her payroll. Your Honor's example is impossible in our system, but I appreciate your point, and I do follow it. We have to go back to California law, even though we're here in the Ninth Circuit and I'm honored to be. This is a case of pure California law violations that are alleged under the Labor Code. There is no rule in California that says you can't use a semi-monthly pay period to calculate the regular rate of pay. Your Honor is referring to the Federal law, which has not been adopted by California on this topic. Well, I thought the rule was that California applies for overtime whatever is the best for the employee, and the California rules are interpreted for the best interest of the employee. And that being so, that would be a matter that really got to go on, but right now it doesn't establish that the pundit doesn't have a case as a matter of law on the basis of the record. I'm not saying you lose here. You know, you may still win this case, but not on a summary basis judgment. In my view, I could be wrong, too. Don't misunderstand. I'm open to hearing. And on your Honor's theory that the Federal law would be embraced, you would still have to prove that somehow our system left her worse off, and that is what has not occurred here. On the summary judgment analysis, plaintiff absolutely had to come up with some material issue of fact. Again, not just establishing that there may be some irregularity with a pay period calculation, but that it resulted in a denial of overtime. She could not get past summary judgment on the showing that there may have been some, there's no cause of action for failure to calculate the regular rate of pay on a seven-day period. There's a cause of action for denial of overtime, and that's what was never established here. I still go back to the calculation period and say there's no California law saying we can't do it this way, and the Federal law isn't even clear you can't do it this way. The code section your Honor referred to earlier when counsel was up here is 548.3b, which says you can use any period that works if the seven-day period doesn't work. It is not at all clear. They talk about a week because we're getting back to paying weekly overtime, which of course the Federal law requires and the Federal law doesn't require the daily. If we say you've got to look at overtime eligibility and rate in the exact same vacuum, then we have to figure out the regular rate of pay for purposes of overtime on a daily basis in California. Don't we? Because we have to pay daily overtime. So don't my people have to calculate it every day and isn't anything else illegal? I submit to this Court no one is making that argument. We are calculating the regular rate on a different pay period than the minimal entitlement to overtime, and no one has brought forth any law, statutory or case law, that says you can't do that. Counsel, does Ms. Miller have any kind of State administrative agency that she can go to and file a complaint? She could have filed a complaint with the Labor Commissioner. Okay. Did she file a complaint with the Labor Commissioner? She did not to my knowledge. Has super cuts practice ever been challenged before the Labor Commissioner in California? This practice, no, Your Honor. She didn't have to exhaust those remedies before she brought this lawsuit, though? She did not, Your Honor. Does the record reflect, I don't even know where it would have come from, the fact that most businesses of any size in California do calculate on a 15-day basis? I don't believe that's in this record, no. There are certainly plenty of cases that we've cited where it shows people doing that, and it's cited with approval. Even the Huntington, California case that talks about California adopting Federal law on the topic of what to include and exclude in the regular rate of pay, that's what it talks about, not this piece. Even that case talks about doing payroll semi-monthly and calculating the regular rate semi-monthly. Is super cuts practice nationwide? Is the practice that's used in California for calculating over time a nationwide practice for super cuts? Yes, it is. So if it's a violation of Federal law, it's being violated everywhere, not just in California. Well, that's correct. The adjustment super cuts makes for California is in adhering to its daily and weekly overtime requirements. But, again, we don't concede that this is illegal under Federal law either. For my purposes today, you know, it's California law, and that's what we've focused on, I think, appropriately. So there were a number of other issues about the matrix system itself. I'd like to ask the Court if I can answer questions about this, because, frankly, it's been a little bit all over the place. And I'd like to address anything. It is complex, but clear. Okay. From my perspective. Okay. You have a minute and a half, so the time is yours if you want it. Well, I never stop talking before somebody makes me, Your Honor. I would add, with respect to this case in general, that I went to law school because I couldn't do math. And then I found myself a wage and hour lawyer. So this is a challenge for me as well. But the main thing that we wanted to focus on was the lack of support for the fact that this system, either calculating on the 15-day period or on the matrix system in general, resulted in a negative outcome for the employees. Not only was the record not clear in establishing that, but logically, there's no reason to think it does. I mean, you average over and you get people on lighter hours where it's not that busy getting a higher rate of pay because they get the benefit of other weeks. Who's to say which way it would go? And there's been no establishment that it resulted in a negative outcome. So this isn't just a technicality where the employer is saying, let us go on this one, because we technically found some way through it. There's no person that's been hurt here. There's no evidence in the record that either the plaintiff or the people that she purports to represent, there's never any class certified in this matter, were ever harmed in any way by these practices. But what I'm saying, I agree there. I'm not disagreeing there. But what I'm saying is that this summary judgment state, just like any other case, it may. There's a probability here that somebody, and obviously, I think in the way you've operated, there'd be the probability that someone was her. And so that's why I say we have to go a little bit further than what you have and you have to. I mean, I know what you're facing because you've got all these people working here. It's a tremendous burden to have to produce all these wage rates and payroll rates for hundreds of employees, you know, and even this one employee. But anyway, that's my concern. But you've done a good job. Your Honor, I appreciate your sentiments. Would it help to remind the court that the district court gave us three supplemental opportunities to brief the issue and we didn't get to the point where we could establish any loss of wage to this plaintiff, who's the only plaintiff before the court? Is this a class action? It is pled as a class action. It was never certified. It's not certified as a class yet. But there's the potential. Not anymore. Well, if it goes back, there's the potential. The judge went over backwards, did he not, to try to give them an opportunity to prove any actual damages here? I believe he did. Okay. Thank you, Your Honor. Mr. Thierman, your time is gone, but I will allow you a minute. Oh, thank you, Your Honor. You will need to be brief. All right. First of all, they never offered as a stipulated fact that the plaintiff had not received a reduction in overtime as a result of the blended method because, in fact, the paystubs show that she did. That's why I ---- How much did she lose? It was like 10 cents an hour in one situation. It was like ---- I have to get it. It's also that same page I quoted in our brief. It was nine cents an hour in the second time. And it was 520-02078 minus ---- I don't know what it was in the third time, but she did. It was a variation. Second of all, in their own brief, they cite the regulations at 29 CFR Part 778.120 on page 23 and 24. The example shown there is the example of what happens when you have two different pay rates in the different weeks. There's nothing wrong with a 15-day average as long as you keep the pay rate the same. But when you have different pay rates is when it goes wrong. That was a commission example. This is a piece rate example. The fact is that with the matrix giving you a different pay rate per productivity, the productivity week, the first week where the overtime is probably going to be work, is wiped out by the nonproductive or nonrevenue-generating second week. That's illegal. Third thing is this was a 17-200, and if it's an unfair and deceptive practice, you don't have to show the restitution. You can get ---- Mr. Stinman, where in the record was the evidence of her loss? It was the pay stubs. And I'm quoting ---- Well, the pay stub won't show the loss. No. It was argument from the pay stubs because they calculated the rates back on page 35. Again, Mr. Stinman, you have a lot at stake here. You were asking for certification of class. You had a lot of employees in California and probably the potential for more outside of California. But you didn't provide ---- Paragraph. You didn't provide any evidence from any outside expert or accountant or anybody that would have taken a look at this pay stub and said, yeah, here's what's going to happen from pay stub to pay stub. Here's the potential for the loss and actually calculate it. Page 34, lines 15 through 21. Page 34 of what? Page 34 of the excerpts of record. Volume 2? Lines 15 through 21. I'm sorry. What volume of your excerpts of record? Sorry, volume 2. Volume 2 and page what? 34? 34. It talks about, thus, the regular rate should be $11.18 an hour and the halftime rate would be $5.59 an hour rather than $16.76. For an overtime rate of $16.76 rather than $15.20. So she lost $1.70 an hour. I'm looking at page 34 of volume 2. That's what I have. You said page 34. Volume 2, page 34, lines something or other. Can I have my copy? I've got it right here. It starts out with a little grid? Right. Okay. Starting with the paragraph 4, which references the page stuff, going to 21. And it continues on with just example after example where she is harmed. I mean, we're not talking a lot of money, but we're talking people who don't earn a lot of money. At least on summary judgment, that ought to be enough. The math shows she was harmed because they blended the rate. If your math is right. Okay. Math, never mind. I think it's right, and if it's wrong, it's still going to show she's harmed because you have two different rates. Nobody works the same rate in both weeks unless they're doing the base rate. As soon as you have one person working two different rates, if there's any overtime in one week, it's got to be a different rate than the real rate if you're blending it over the second week. You're taking an average of two dissimilar things and applying it to hours in one week versus hours in the other. It can't be the same unless they work both the same number of hours overtime in both weeks. It's a mathematical impossibility. It just doesn't work, and I guess I have to put it on myself. I didn't explain it to the court well enough. Okay. Thank you. Thank you. All right. Miller v. Regents Corporation is ordered submitted, and the last case for the day will be seal one versus seal A.
judges: Bright, Bybee, Smith M.